**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | Western District of Oklahoma |
|---|---|
| Name (under which you were convicted):<br>Bobby Chris Mayes | Docket or Case No.:<br>CR-20-240-F |
| Place of Confinement:<br>Texarkana FCI, 4001 Leopard Drive<br>Texarkana, TX  75501 | Prisoner No.: Reg No.:  09413-509 |
| United States of America v. Movant Bobby Chris Mayes | |

**MOTION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

    United States District Court for the Western District of Oklahoma

    United States Courthouse

    200 N.W. 4th Street

    Oklahoma City, OK 73102

    (b) Criminal docket or case number (if you know): CR-20-240-F

2. (a) Date of the judgment of conviction (if you know):

    November 9, 2023

    (b) Date of sentencing: November 3, 2023

3. Length of sentence: One hundred and thirty (130) months as to each of Counts 1 through 13 and one hundred and twenty (120) months as to each of Counts 14 through 19, all such terms to be served concurrently with each other.

4. Nature of crime (all counts): Count 1: Conspiracy to Commit Wire Fraud, 18 U.S.C. Sec. 1349 and 18 U.S.C. Sec. 1343; Counts 2-13: Wire Fraud, Aid and Abet, 18 U.S.C. Sec. 1343 and 18 U.S.C. Sec. 2; Counts 14-19: Uttering Forged Security, Aid and Abet, 18 U.S.C. Sec. 513(a) and 18 U.S.C. Sec. 2; Counts 20-25: Aggravated Identity Theft, Aid and Abet, 18 U.S.C. Sec. 1028(A)(a)(1) and 18 U.S.C. Sec. 2.

5. (a) What was your plea? (Check one)

    (1)   Not guilty x (2)   Guilty   (3)   Nolo contendere (no contest)

(b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?   N/A

6. If you went to trial, what kind of trial did you have? (Check one)   Jury x   Judge only
7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes
8. Did you appeal from the judgment of conviction?   No
9.    If you did appeal, answer the following:

  (a) Name of court: _____

  (b) Docket or case number (if you know): _____

  (c) Result:

 (d) Date of result (if you know):

 (e) Citation to the case (if you know):

 (f) Grounds raised:

(g) Did you file a petition for certiorari in the United States Supreme Court? No.

If "Yes," answer the following:

    (1)   Docket or case number (if you know): _____

    (2)   Result:

    (3)   Date of result (if you know):

    (4)   Citation to the case (if you know):

    (5)   Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court? No.
11. If your answer to Question 10 was "Yes," give the following information: N/A

   (a)   (1) Name of court:

    (2) Docket or case number (if you know): N/A

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5)   Grounds raised:

    (6)   Did you receive a hearing where evidence was given on your motion, petition,

     or application? Yes No

 (7) Result:

 (8) Date of result (if you know):

  _____

(b) If you filed any second motion, petition, or application, give the same information: N/A

 (1) Name of court:

 (2) Docket or case number (if you know):

 (3) Date of filing (if you know):

 (4) Nature of the proceeding:

 (5) Grounds raised:

 (6) Did you receive a hearing where evidence was given on your motion, petition, or application? N/A

 (7) Result:

 (8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application? N/A

 (1) First petition: No.

 (2) Second petition: No

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

 Mr. Mayes entered into with the government an Agreement Concerning Sentencing, waiving some rights except with respect to claims of ineffective assistance of counsel.

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

3

**GROUND ONE:  (Failure to Use Material Evidence) Trial Counsel Was Deficient in Failing to Use Material Evidence in Trial Counsels' Possession, Which Prejudiced the Defense, and Trial Counsels' Errors Were So Serious as to Deprive Mr. Mayes of a Fair Trial, a Trial Whose Result Is Reliable.**

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

**Handwritten Pages of Material Evidence**

1. On September 25, 2020, Mr. Mayes' trial counsel retrieved two boxes of files that Andrew Elliott ("Mr. Elliott") had provided to his attorney Scott Adams ("Mr. Adams").  The Acknowledgement of Receipt "These boxes represent the full and complete files as provided by Mr. Elliott relevant to Big Red Sports and Imports as maintained by Adams & Associates, P.C. **Exhibit 5**.  In one of the retrieved files, four pages of handwriting consisting of thirteen numbered paragraphs were found. **Exhibit 1.  Exhibit 4, ¶ 3.**

2. Mayes recognized the handwriting on the four pages to be Andy Elliott's handwriting. **Exhibit 4, ¶ ¶ 4, 9.**

3. Mr. Mayes' trial counsel had the handwritten pages in their possession for at least a year before trial.  **Exhibit 4, ¶ 5; Exhibit 1.**

4. At the time when the four handwritten pages were discovered and leading up to trial, several times Mr. Mayes discussed the four handwritten pages with his trial counsel, telling trial counsel he wanted to use the handwritten pages as evidence during the trial to impeach Mr. Elliott.  **Exhibit 4, ¶ 6.**

5. The four pages of handwritten words by Mr. Elliott were available for use by trial counsel at trial.  The day before jury trial began, Elliott's four pages of handwriting were stored

onto the hard drive provided by trial counsel under the exhibits folder, and was saved onto the hard drive in the exhibit folder on November 2, 2021 at 5:16 p.m. The document was saved as "Andy elliott notes". **Exhibit 14**.

6. During the trial, Mr. Mayes repeatedly asked his trial counsel to use the Elliott four handwritten pages to impeach Mr. Elliott with his handwritten pages. Mr. Mayes' trial counsel refused. **Exhibit 4, ¶ 7.**

7. Mr. Mayes' trial counsel told Mr. Mayes they could not use the four handwritten pages at trial to impeach Mr. Elliott because the handwritten pages were attorney/client and were privileged between Mr. Elliott and his attorney Mr. Adams, and could not be used at trial. **Exhibit 4, ¶ 8.**

8. Mr. Mayes did not agree with his trial counsel not to use the handwritten pages at trial to impeach Mr. Elliott. Mr. Mayes argued with trial counsel to use the handwritten pages. Mr. Mayes told trial counsel that based on the content of the pages, he wanted to use the four handwritten pages to impeach Mr. Elliott. **Exhibit 4, ¶ 9.**

9. Mr. Mayes told trial counsel to ask the Judge if the four handwritten pages could be used at trial. **Exhibit 4, ¶ 12.**

10. Mr. Mayes' trial counsel refused to use the handwritten pages and told him, "We can't use it. We'll get in trouble." **Exhibit 4, ¶ 13.**

11. During cross examination, Mr. Elliott was asked "you don't have a single text message that confirms anything you're saying about Chris?" to which Mr. Elliott answered, "I don't need a text message to confirm everything." Mr. Elliott was asked, "You don't have a single

document, other than your word, for the jury to believe that anything you're saying is true?", to which Mr. Elliott answered "I would not be here under oath telling a lie." Vol. III, Tr. 590, **Exhibit 7.**

12. Though in the possession of trial counsel the four pages of handwriting contradicting Mr. Elliott's testimony were never used. **Exhibit 1.** The evidence supported the four handwritten pages were written by Mr. Elliott,[2] but the handwritten pages were not used during cross-examination of Mr. Elliott, were not offered into evidence, and were never used at trial.

13. Corroborating the handwritten pages was Mr. Elliott's Attorney's Hypothetical Proffer ("proffer letter") which was given to the government by Mr. Adams. The proffer letter did not state that the money Mr. Elliott gave to Ms. Mullins was for bribes. The proffer letter stated, "Again, Elliott assumed that Mayes was simply giving his paramour money, not attempting to bribe her to give the dealership more loans. The dealerships were doing fine without the need to bribe Mullins as was evident by the yearly buying TFCU was doing." **Exhibit 3**, pg. 9.

---

[2] A handwriting expert was retained by Mr. Mayes to examine the four handwritten pages. Handwriting forensic expert Brenda Petty examined four (4) handwritten document pages with the purported known handwriting of Andy Elliott and compared other documents to determine if the author of the four handwritten pages had similarities or dissimilarities in writing habits with the other documents. Ms. Petty's professional opinion to a reasonable degree of Scientific Methodology was "one common hand as author of the questioned and known documents. The common hand is that of Andy Elliott." **Exhibit 6, ¶ 21**. Mr. Mayes recognized the handwriting on the four pages to be Andy Elliott's handwriting. **Exhibit 4, ¶ 4.**

14. The Elliott four handwritten pages regarding Ms. Mullins that "...SHE WAS NEVER PAID TO DO A LOAN.  <u>PERIOD</u>.", and "IT NEVER HAD ANYTHING TO DO WITH WORK. EVER" were corroborated by Mr. Elliott's Attorney's Hypothetical Proffer that "...not attempting to bribe her to give the dealerships more loans. **Exhibit 1, ¶¶ 9, 10**; **Exhibit 3, pg. 9**. Both statements from Mr. Elliott, one in his own handwriting and the other through his attorney by proffer letter to the government, supported each other in the pronouncement that there was no bribery of Ms. Mullins.

15. Courtney Wells testified she did not have a meeting with Mr. Elliott and Mr. Mayes where it was supposedly decided Ms. Mullins would be bribed.  Ms. Wells testified the meeting never took place. Ms. Wells testified that none of what Mr. Elliott testified about her involvement in the bribery of Ms. Mullins was true. Vol. X, Tr. 2388, 2389, **Exhibit 8.**

16. Trial counsel did not use the four handwritten pages to impeach Mr. Elliott at trial. The four handwritten pages contradicted Mr. Elliott's testimony on material facts. See attached chart, **Exhibit 2,** which sets forth Mr. Elliott's handwritten pages as material evidence contradicting Mr. Elliott's trial testimony.

**Facts Supporting Prejudice to Mr. Mayes**

17. The four handwritten pages contradicted Mr. Elliott's testimony about the bribes Mr. Mayes supposedly directed him to give to loan officer Ms. Mullins.  The four handwritten pages evidenced Mr. Elliott testified falsely when he testified Mr. Mayes directed him to pay Ms. Mullins bribes.   Mr. Mayes was prejudiced by trial counsel's refusal to use the handwritten

pages to impeach Mr. Elliott because Elliott's four handwritten pages denied Ms. Mullins was bribed.

18. The four handwritten pages supported Mr. Mayes' testimony and Ms. Well's testimony that there was no bribing of Ms. Mullins. **Exhibit 8; Exhibit 9.** The four handwritten pages show that Ms. Mullins was not bribed. The proffer letter supported that Ms. Mullins was not bribed. The handwritten pages evidence was material and favorable to Mr. Mayes' defense. Mr. Mayes was prejudiced by trial counsel's refusal to use the four handwritten pages at trial to support his and Ms. Mullins testimony that there was no bribery. Mr. Mayes was prejudiced by trial counsel's refusal to use the four handwritten pages to impeach Mr. Elliott, which would have supported Mr. Mayes testimony that there were no bribes. **Exhibit 1.**

19. The four handwritten pages did not mention any supposed "role playing." Mr. Elliott's testimony about "role playing" was completely absent in his four handwritten pages. The four handwritten pages did not mention Mr. Mayes. Not cross-examining Mr. Elliott using his four handwritten pages and that "role playing" was nowhere to be found in the handwritten pages prejudiced Mr. Mayes. That role playing was not in the handwritten pages also supported Mr. Mayes' testimony that there was no "role playing". **Exhibit 1.** Mr. Mayes was prejudiced by trial counsel not using the four handwritten pages to challenge Mr. Elliott's testimony, and to also support Mr. Mayes testimony.

20. The roleplaying testimony by Mr. Elliott (the four handwritten pages never mention any roleplaying) prejudiced Mr. Mayes. For example, Mr. Elliott testified that one of the role

plays was that Mullins "... had never done anything wrong and had never gotten a dollar." Vol. III, Tr. 411, **Exhibit 10**. Another role play Mr. Elliott testified was that Mullins was a "whore" she "slept" with Mr. Mayes, and she "slept" with "me". Vol. III, Tr. 425, **Exhibit 10**. And "we paid her money to screw him". Vol. III, Tr. 561, **Exhibit 10**. Mr. Mayes testified he has never role-played with anybody that he can remember in his life. Vol. X, Tr. 2269, **Exhibit 11**. Mr. Mayes was prejudiced by trial counsel not using the four handwritten pages to challenge Mr. Elliott's "role playing" testimony and impeach his testimony by using the handwritten pages.

21. Mr. Mayes was prejudiced by the following testimony that would have been contradicted and impeached by the four handwritten pages, but trial counsel failed to use the handwritten evidence at trial. Mr. Elliott testified that *"we"* gave Ms. Mullins the money, but there was no "we" in Mr. Elliott's four handwritten pages, only that Mr. Elliott gave Ms. Mullins money. Mr. Elliott's four handwritten pages never mentioned that Mr. Elliott and Mr. Mayes gave Ms. Mullins money -- there was no "we" in the four handwritten pages. Ms. Mullins testified she never received any money from Chris Mayes. Mr. Mayes did not submit loans to Ms. Mullins. Vol. I, Tr. 100, **Exhibit 12**. Ms. Mullins testified she was not aware that Mr. Mayes had anything to do with the "arrangement" "position" that Mr. Elliott had put her in the with the loans. Vol. I, Tr. 101, **Exhibit 12**. Ms. Mullins testified Mr. Mayes never asked her or pressured her to approve loans for his dealerships. Vol. I, Tr. 111. **Exhibit 12.** Mr. Mayes testified he has never paid a loan officer and he's never been accused of paying a loan officer. Mr. Mayes testified he never instructed Mr. Elliott to jump

9

on Ms. Mullins or try to keep her quiet. Mr. Mayes testified he absolutely did not tell Mr. Elliott to tell Ms. Mullins to lie about receiving money. Vol. X, Tr. 2268, **Exhibit 9**.

(a) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Movant did not appeal this issue.

(2) If you did not raise this issue in your direct appeal, explain why:
Mr. Mayes entered into with the government an Agreement Concerning Sentencing, waiving some rights except with respect to claims of ineffective assistance of counsel.

(b) **Post-Conviction Proceedings: N/A**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
No

(2) If your answer to Question (c)(1) is "Yes," state:
Type of motion or petition:
Name and location of the court where the motion or petition was filed:
Docket or case number (if you know):
Date of the court's decision:
Result
(attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?
Yes   No

(4) Did you appeal from the denial of your motion, petition, or application?
Yes   No

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?
Yes   No

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A
Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO**: **Trial Counsel's Failure to Conduct A Reasonable Investigation Regarding The Four Handwritten Pages Constituted Deficient Performance.**

(b) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1. Trial counsel did not do any investigation regarding the four handwritten pages. **Exhibit 1**. Mr. Mayes' trial counsel never told him of trial counsel making any investigation of facts and circumstances regarding the four handwritten pages. **Exhibit 4, ¶ 9, 10.**

2. Mr. Mayes told trial counsel to talk to Mr. Elliott's attorney Mr. Adams about Mr. Elliott's four handwritten pages. **Exhibit 4, ¶ 9.**

3. Mr. Mayes was never told by any of his lawyers that they had contacted Mr. Adams to talk to him about the handwritten four pages or to investigate if the handwritten four pages were attorney client privileged communications. **Exhibit 4, ¶ 9, 10, 11.**

4. Trial counsel did not notify Mr. Adams that they had found four handwritten pages from a file that was in two boxes of files that Mr. Elliott had provided to Mr. Adams, and which counsel for Mr. Mayes had retrieved from Mr. Adams office. **Exhibit 5.**

5. Mr. Adams was not contacted by trial counsel to investigate the facts and circumstances regarding the four handwritten pages. **Exhibit 4, ¶ 9, 10, 11.**

6. Mr. Mayes was never told by trial counsel that trial counsel ever conducted or did any investigations, made any phone calls, interviewed any persons or witnesses with knowledge, if the hand written pages were shared or discussed with others, or did any other actions concerning the handwritten pages. **Exhibit 4, ¶ 9, 10, 11.**

7.  Mr. Mayes told trial counsel to ask the Judge if the handwritten pages could be used at trial. **Exhibit 4, ¶ 12.**

8.  Trial counsel did not present the handwritten pages to the Court.

9.  Trial counsel did not seek to have the handwritten pages reviewed by the Court in camera or otherwise to determine any issues regarding use at trial if the government opposed.

**Facts Supporting Prejudice to Mr. Mayes**

10. Trial counsel had a duty to make reasonable investigations. Mr. Mayes was prejudiced by trial counsels' failing to make reasonable investigations, violating the duty to make reasonable investigations.

11. The four handwritten pages contradicted Mr. Elliott's testimony regarding material facts. Mr. Elliott was not cross-examined regarding the four handwritten pages. The four handwritten pages were not offered in to evidence during cross examination of Mr. Elliott or at any other time. Mr. Mayes was prejudiced when trial counsel violated their duty to make a reasonable investigation regarding the four handwritten pages and regarding trial counsels' belief that the handwritten pages were attorney/client privileged communication between and Mr. Elliott and Mr. Adams.

12. Trial counsel told Mr. Mayes that the handwritten pages were attorney/client privileged and could not be used. **Exhibit 4, ¶ 8.** There was no reasonable decision that made the investigation into the four handwritten pages unnecessary. There was no thorough investigation of law and facts relevant to plausible options regarding the handwritten pages.

Mr. Mayes was prejudiced when trial counsel violated their duty to make a thorough investigation of law and facts relevant to plausible options.

**Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Movant did not appeal this issue.

(2) If you did not raise this issue in your direct appeal, explain why:

Mr. Mayes entered into with the government an Agreement Concerning Sentencing, waiving some rights except with respect to claims of ineffective assistance of counsel

(c) **Post-Conviction Proceedings: N/A**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes   No

Date of the court's decision:
(2) If your answer to Question (c)(1) is

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?

Yes   No

(4) Did you appeal from the denial of your motion, petition, or application?
Yes   No

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?
Yes   No

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

13

Result (attach a
copy of the
court's opinion
or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE: Trial Counsel was Deficient in their Performance in Failing to Function as Counsel as Guaranteed Under the Sixth Amendment After Mr. Elliott testified about Undisclosed Evidence During the Trial**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

1. During cross-examination of Mr. Elliott at trial, trial counsel questioned Mr. Elliott about being offered immunity by the government.

2. When asked if the government ever talked to Mr. Elliott directly before he was offered immunity, Mr. Elliott answered "I don't believe so." Vol. III, Tr. 520, **Exhibit 13**.

3. The following testimony exposed new evidence previously undisclosed to Mr. Mayes by the government:

   Q. (By trial counsel): Did they ever ask you to give a statement about what you would say before you got immunity?

   A. (Andrew Elliott): **We gave them a handwritten letter** - -

   Q. Right, your lawyer –

   A. – **before that**.

   Vol. III, Tr. 520; **Emphasis Added**. **Exhibit 13.**

4. The government did not provide Mr. Mayes with the handwritten letter described by Mr. Elliott during his testimony.

14

5. Upon hearing Mr. Elliott testify about the handwritten letter given to the government about what he would say before he got immunity, trial counsel did not do any follow up questions about the handwritten letter. Vol. III, Tr. 520. **Exhibit 13.**

6. Mr. Mayes was not aware of the existence of the handwritten letter until Mr. Elliott testified at trial about the handwritten letter that was given to the government before he got immunity and before his lawyer wrote the "hypothetical letter" proffer. **Exhibit 4, ¶ 14.**

7. Trial counsel did not move for a mistrial upon learning there was a handwritten letter given to the government by Mr. Elliott ("We gave them a handwritten letter - -"). **Exhibit 13.**

8. Trial counsel did not request an adjournment of trial to request a *Brady* hearing conducted on the newly discovered evidence of the handwritten letter that was given to the government as testified about by Mr. Elliott.

9. Mr. Mayes is simultaneously filing a motion for discovery to obtain information about the handwritten letter Mr. Elliott testified "We gave them a handwritten letter - -" given to the government about what Mr. Elliott would say before he was offered immunity as testified about by Mr. Elliott during cross-examination, and before his lawyer wrote the "hypothetical statement,.". **Exhibit 13.**

**Facts Supporting Prejudice to Mr. Mayes**

10. Mr. Mayes was prejudiced because he did not have for trial the material evidence of the handwritten letter that was given to the government about what Mr. Elliott would say before he got immunity.

**Direct Appeal of Ground Three:**

  (1)  If you appealed from the judgment of conviction, did you raise this issue?
    Movant did not appeal this issue.

  (2)  If you did not raise this issue in your direct appeal, explain why:
  Mr. Mayes entered into with the government an Agreement Concerning Sentencing, waiving some rights except with respect to claims of ineffective assistance of counsel.

  (3)  **Post-Conviction Proceedings: N/A**

  (4)  Did you raise this issue in any post-conviction motion, petition, or application?
    Yes  No

  (5)  If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____
_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

  (6)  Did you receive a hearing on your motion, petition, or application?
    Yes  No

  (7)  Did you appeal from the denial of your motion, petition, or application?
    Yes  No

  (8)  If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?
    Yes  No

  (9)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

  Docket or case number (if you know:

  Date of the court's decision:

  Result (attach a copy of the court's opinion or order, if available):

  (10)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

           Grounds One, Two, and Three.  Mr. Mayes entered into with the government an Agreement Concerning Sentencing, waiving some rights except with respect to claims of ineffective assistance of counsel.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging? No.

   If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

   At preliminary hearing:

   Vicki Z Behenna
   Behenna Goerke Krahl & Meyer
   210 W. Park Ave
   Suite 3030
   Oklahoma City, OK 73102

   Michelle L Greene
   6402 N Santa Fe Ave, Suite A
   Oklahoma City, OK 73116

   Rachel N Jordan
   HB Law Partners PLLC
   4217 28th Ave NW, Suite 101
   Norman, OK 73069

   William H Bock
   6402 N Santa Fe Ave, Suite A
   Oklahoma City, OK 73116

   (a) At arraignment and plea: (See above counsel in para (a).

   (b) At trial:

      See above counsel in para (a) and

      W Brett Behenna
      Krahl Goerke Meyer & Behenna
      210 Park Avenue, Suite 3030
      Oklahoma City, OK 73102

   (c) At sentencing:

    Bill Zuhdi
    The Zuhdi Law Firm
    PO Box 1077
    Oklahoma City, OK  73101

    William H Bock
    6402 N Santa Fe Ave, Suite A
    Oklahoma City, OK 73116

   (d) On appeal: N/A

   f) In any post-conviction proceeding:
    Bill Zuhdi
    PO Box 1077
    Oklahoma City, OK  73101

   (g) On appeal from any ruling against you in a post-conviction proceeding: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes.

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   No.

   (a)   If so, give name and location of court that imposed the other sentence you will serve in the future: _____

   (b)   Give the date the other sentence was imposed:

   (c)   Give the length of the other sentence: _____

   (d)   Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future? N/A

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*
The motion is timely.

Evidentiary Hearing Requested. Based upon the ineffective assistance of counsel, Ground One, Ground Two, and Ground Three herein, Mr. Mayes requests an evidentiary hearing to further expound upon and provide evidence and testimony related to the facts raised herein.

Therefore, Movant asks that the Court grant the following relief: based on the facts set forth above, as to each claim, sufficient facts have been alleged to show relief is warranted. Mr. Mayes submits there are sufficient provable facts and facts supporting the prejudice element of each claim to show he is entitled to relief. Mr. Mayes was prejudiced because his sentence imposed was in violation of the Sixth Amendment. Mr. Mayes was denied his constitutional right to effective assistance of counsel. There has been such a denial or infringement of Mr. Mayes' constitutional rights as to render the judgment vulnerable to collateral attack, the Court should vacate and set the judgment aside and should discharge Mr. Mayes or resentence him or he should be granted a new trial or correct his sentence as may appear appropriate or any other relief to which movant may be entitled. 28 U.S.C. § 2255.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The imitation period shall run from the latest of --
(1) the date on which the judgment of conviction became final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

                    Respectfully submitted,

                    *s/Bill Zuhdi*
                    Bill Zuhdi, OBA#10013
                    The Zuhdi Law Firm
                    PO Box 1077
                    Oklahoma City, Ok 73101
                    (405) 232-1400 (Office)
                    (405) 920-6164 (facsimile)
                    bill@billzuhdi.com (Email)

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.   Mr. Zuhdi is representing Movant Bobby Chris Mayes in this matter which is why Movant Mr. Mayes did not sign this motion.